| 12 | 873 |
|----|-----|
| 47 | 241 |
| 12 | 873 |
| 111 | 577 |

## J. WILLIAMS et als. *v.* J. CLOSE et als.

A party may institute a petitory action for one tract of land, and in the same petition may sue the same defendant for slander of title of another and distinct tract, but could not in the same suit sue for a tract of land and for damages for slander of title to such tract.

The confirmation of a land claim enures to the benefit of the original grantor or those holding under him, as held in 3d L. R., 107, *Sackett* v. *Hooper.*

APPEAL from the District Court of the parish of St. Landry, *Martel*, J. *Swayze & Moore*, for plaintiff. *B. F. Linton*, for defendant and appellant. *T. H. Lewis*, for intervenors.

COLE, J. This action is instituted in the petitory form for one tract of land, and in the form of an action of jactitation or slander of title for three other and distinct tracts of land.

The plaintiffs allege that they are the nearest collateral heirs of *Isaac Baldwin, jr.*, deceased, and transferrees of *Laura* and *William Taylor*, universal legatees of said *Baldwin*, of all their rights under the last will and testament of said *Baldwin;* and as such, they claim to be the owners, each, of an undivided portion of the following tracts of land situated in the parish of St. Landry, to wit:

1.   Of one piece of land situated at the junction of the bayous Courtableau and Têche, having the former for its north, and the latter for its eastern boundary, being all that part of the claim confirmed in the name of *Charles Barré*, as No. 5 of the report of the Commissioners of the United States, for adjusting land titles in the Western District of Louisiana, lying to the west of the Bayou Têche and on the right bank of the Bayou Courtableau, as represented on an extract annexed to the petition from the United States Township Map of T. 5 and 6 S. of Range 5 east, being a part of section 4 in township 6 and of section 42 in T. 5.

2.   Another piece of the same confirmed claim, having a front on the eastern side of the Bayou Têche, and bounded on the south by the southern line of

said confirmed claim, and on the north by the lines of a tract of land forming part of said confirmed claim No. 5, and known lately as belonging to *John Close* and *Euphrosine Barré*, his wife.

3.   Another tract or piece of said confirmed claim No. 5, lying on the right bank of Bayou Courtableau, bounded on the east by the eastern side line of said claim, on the south by the southern line thereof, and of such width as to give said tract a superficies of between 1100 and 1200 acres.

4.   And another piece of land lying on the left bank of the Courtableau, measuring six arpents front on the left bank of said bayou, by forty arpents in depth, forming the upper six arpents of that part of said claim No. 5, which lies on the left bank of said Bayou Courtableau.

They further aver, that these tracts of land came down to them from *Jacques Courtableau*, who held a much larger tract by virtue of a grant from the French government, by a regular chain of titles, as follows :

At *Courtableau's* sale, *Lamorandière* purchased the whole tract for *Madame Marcantell*, and at the sale of the latter, *Evan Mills* became the purchaser of the same ; after the death of the latter, his widow married one *Reed*, who sold at private sale, by an informal act, the said land to *Barré*, between whom and the heirs of *Evan Mills* arose a suit as to the title thereto, which was decided in 1814 ; the judgment of the court giving the heirs of *Mills* not quite one half of the said whole tract, of which two of said heirs conveyed to *Judge Isaac Baldwin* their interest by regular deeds of sale.   That said *Judge Baldwin* died in 1833, leaving his wife, his widow in community, and one child, *Isaac Baldwin*, his sole heir ; and the said *Mrs. Baldwin* died in 1836, leaving the said *Isaac Baldwin*, her son and sole heir ; that in 1845, the said *Isaac Baldwin* died, leaving *Laura Taylor* and *William Taylor* as instituted heirs and universal legatees, who afterwards conveyed all their rights in the estate of said *Isaac Baldwin, jr.*, to *Louis Janin* and all the petitioners, except *Jonhson*, who were heirs at law of said *Baldwin ;* and afterwards the said *Janin* sold to said *Sidney L. Johnson* all his interest in said estate.

They further allege that their title and possession and that of those under whom they claim, had always been acknowledged by said *Charles Barré* and by his heirs, until lately, when certain persons styling themselves the heirs, or agents or assignees of heirs of *Barré*, *John Close*, *Zepherine Close* and her husband *Honoré Déjean*, have taken possession of the tract of land lying on the east or left bank of the Bayou Courtableau, forming the upper six arpents of section 42, T. 5, S. R. 5 east, fronting on said bayou and measuring back forty arpents, being the portion colored green on the plat filed in the former suit by the Commissioners ; that they have also slandered the title of petitioners to the other tracts of land above described, saying that they have no title thereto.

Plaintiffs pray that they be decreed owners of eight undivided ninths of the tract of land on the east or left bank of Bayou Courtableau, consisting of the upper six arpents front on said bayou, with forty arpents in depth between parallel lines, being the upper six arpents of section 42, and recover possession of the same, and that defendants be condemned to pay petitioners one thousand dollars for slandering their title to the other three tracts of land before described, as belonging to them, or else to set up and prove their title to the same, if any they have.

Plaintiffs filed an amendment to their original petition, setting up, that the question of title to said land had been finally decided in the suit of *O'Connor*

*and heirs of Mills* v. *Barré*, 8 M., p. 446, and formed *res judicata* between the parties to the present suit, which they specially pleaded.

Afterwards, *Evan O'Connor, Sarah O. O'Connor*, wife of *J. McClusky, David Coe*, natural tutor of *David Green*, and *Mary Coe*, issue of his marriage with *Charlotte O'Connor*, deceased, and *Pierre Sylvestre* intervened and averred that they were the sole surviving heirs and legal representatives of *Helen Mills*, deceased, and as such, are the owners and proprietors by good and valid titles, of the third part of the fourth of the half of eight thousand eight hundred acres of the land in controversy, or the third of the fourth of four thousand four hundred acres, and pray to be adjudged owners of the same.

The interests of the plaintiffs in this case are in common with that of the intervenors, being owners in common of the land in controversy.

The defendants answered and set up in defence: 1, a general denial; 2, special denial of the heirship of plaintiffs; 3, they denied that plaintiffs had any title of any description; 4, that the Territorial Court had no jurisdiction and could settle no title to lands claimed by virtue of a complete grant emanating either from the Spanish or French governments; 5, that the United States Land Commissioners had reported favorably to the claim of *Barré* to the land; 6, that the judgment of the Supreme Court of Louisiana in the suit of *The Heirs of O'Connor et als.* v. *Barré*, had never been executed or carried out and is now barred by prescription, in consequence of its never having been notified to *Barré* or his heirs; 7, that the act of confirmation by Congress to *John Close* is a complete title to him; 8, prescription of five, ten, twenty and thirty years, by virtue of a good title and possession.

On these issues, the parties went to trial; judgment was rendered by the Judge *a quo* in favor of plaintiffs and intervenors, sustaining and quieting them in the possession of and title to the lands described in their petitions, but rejected the prayer for damages.

The defendants have appealed.

There is a bill of exceptions to the refusal of the court to rule the plaintiff to elect to proceed in one form of action or the other, either for a slander of title or in a petitory form; defendants alleging therein, that both forms of action could not be tried at the same time.

We are of opinion that a party may institute a petitory action for one tract of land, and in the same petition may sue the same defendant for slander of title of another and distinct tract; for he would be only enforcing his several rights against the same parties; but he could not in the same suit sue for a tract of land in the petitory form, and also sue for slander of title of the same tract. In the suit at bar, plaintiffs distinctly allege that defendants are in possession of one of their alleged tracts of land, that plaintiffs have the best title therto, and ask to be decreed owners thereof and to recover possession of the same; they also allege that defendants have slandered their title to three other tracts of land, and ask for damages for the same, or else that they set up and prove their title to the same, if any they have: this action then for the one tract is of the petitory character, and for the other three tracts it is an action for the slander of title, and the plaintiff had the right so to frame his petition.

In the same bill of exceptions defendants excepted to the ruling of the lower court on a motion of plaintiffs, which alleged that the former in their answer

having set up a denial of the slander, and also a better title to the land than plaintiffs, must either waive their title and permit the court to investigate the question of damages for slander of title, or make out their title by the introduction of proof. The court seemed to consider the whole case as an action of slander, and ruled accordingly. This was incorrect. So far as the part of the action which is in a petitory form is concerned, the court ought to have ruled that plaintiffs should exhibit and make out their title for the one tract sued for, and not that defendants should first produce their title for the same; but as we have all the evidences of title before us of both parties, it is not neces. sary to remand the case; but the ruling was proper, so far as it relates to the part of the action which was an action of slander as to the three other tracts of land.

The object of the action of jactitation is to afford a shield to the possessor, and to place him in the same advantageous position when his possession is troubled by slander, as by trespass; to coerce the defamer to institute suit, and to impose on him the burden of proving his assertions.

In this species of action, if defendant denies the slander, he then admits he has no title; he cannot deny the slander and also set up title, for these would be inconsistent pleas. 9 M., 714, *Livingston* v. *Heerman.* The court having ruled them to elect, defendants proceeded to attempt to make out their title, which, in our opinion, they have entirely failed to establish.

The points of defendants will be considered in their order :

1. "Special denial of the heirship of plaintiffs."

The heirship is sufficiently established in the Record.

2. "They denied that plaintiffs had any title of any description."

The title of plaintiffs is proved by the evidence.

3. "That the Territorial or Supreme Court had no jurisdiction and could settle no title to lands claimed by virtue of a complete grant emanating either from the Spanish or French governments, and therefore had no jurisdiction of the matters at issue in the suit of *The Heirs of O'Connor et als.* v. *Barré,* 3 M., 446."

This objection is without force; for the contest in the said suit in 3 M., was not between persons claiming lands under distinct titles from either the French, Spanish or American governments; the question to be settled was not, whether one of two or more distinct titles, under either of those governments, should prevail, but, on the contrary, it was a suit between parties claiming under the same original title, in which the plaintiffs, heirs of *Evan Mills,* who was the last purchaser before *Barré* of the land, sought to set aside the sale thereof to *Barré* by the second husband of their mother, on the ground that it was void *in toto,* for want of certain forms under the laws of Louisiana.

The questions raised in that case related to the laws of Louisiana, and not to those of the French, Spanish or American governments, and the courts of Louisiana were the only tribunals proper to investigate and decide them.

4. But it is urged, "that said judgment was never carried out or executed; that *Barré* was never notified, either of the judgment or of the report or action of the commissioners or referrees appointed to execute the same."

The testimony of their own witness, *C. Hollier,* settles this objection; he testifies that "*Barré* told him that there was a judgment against him, that he was notified with it, and that if *Baldwin* and *O'Connor* would not be satisfied with the portion of the land on this side of the bayou, he would give them a portion of his land on the little bayou."

Besides, the commissioners, whilst executing the judgment of the court, were at *Barré's* house; they proceeded from there to run the lines of division that were to mark out to him his land and distinguish it from that of the heirs of *Mills*, in accordance with said judgment.

Besides, *Barré* was fully represented in court when the final judgment was rendered and throughout the proceedings.

5. "That the United States Land Commissioners had reported favorably to the claim of *Barré* to the land."

On the trial, they introduced an extract from the American State papers, vol. 3, p. 89, in support of their claim. This is a report of the United States Land Commissioners on the claim of *Charles Barré* to the whole tract granted to *Courtableau;* it is favorable to the claim and recommended its confirmation by Congress.

This recommendation must have been based upon the supposition that the title of *Courtableau* had been transferred to *Barré;* and even if the claim of *Barré* had been actually confirmed, the confirmation would inure to the benefit of the original grantee, or those holding under him. 3 L., p. 107, *Sackett* v. *Hooper.*

Now, *Barré*, the ancestor of the defendants, never had a title under *Courtableau*, the original grantee of the French government, and those who held under him, to more than one-half of the whole tract granted. It is true, that he acquired by prescription the portion of an heir in the other half of said tract which was decreed to belong to the heirs of *Mills;* therefore, the act of confirmation aforesaid could inure to his benefit only as to the half which he acquired by deed from *Mrs. Reed*, widow of *Evan Mills;* for the other half of the tract never passed to him by said deed of sale; it belonged to the heirs of *Evan Mills*, who was the last purchaser of the land before *Barré*, and never passed out of their ownership or possession. This was the decision of the Supreme Court of this State in 3 M., p. 446.

6. "That the act of confirmation by Congress to *John Close* is a complete title to him."

The patent issued to *John Close* on the 23d of March, 1846, cannot affect the claim of plaintiffs, for it was decided to be good and valid long before this patent was issued by the supreme tribunal of the State; besides, this patent is a mere quit claim from the United States and conveys to *Close* only such title as the government itself had at the time. The patent itself declares that it is "in no manner to affect the rights of third persons nor preclude a judicial decision between private claimants to the same land."

It is clear then that this patent or confirmation to *Close* cannot by its own purport affect injuriously the claim and title of plaintiffs.

7. The plea of prescription cannot prevail, because no such possession has been established as would serve as a basis for prescription.

8. One of the defendants, *John Close*, in support of his claim to the land, produced an act of sale from *Barré* to his daughter, the wife of *Close*. This act is dated May 21, 1813, and was passed after the litigation between the vendor and the heirs of *Mills*, respecting the land in controversy, had commenced; for the suit of *O'Connor et als.* v. *Barré* was filed in 1811, and it was passed one year and a few months before the final judgment of the Supreme Court was rendered in the case, decreeing the heirs of *Mills* to be the owners of the land which plaintiffs now claim. This transfer could in no manner affect

WILLIAMS
v.
CLOSE.

the title of plaintiffs; for when property actually in litigation is sold, the purchaser is bound by the judgment in the suit. 3 An., p. 252, *Gillespie* v. *Cammack.*

Besides, it does not appear that the land transferred by said act is part of the lands which were allotted to the heirs of *Mills* by the commissioners appointed, under the decree of the court, in the suit of *O' Connor et als.* v. *Barré,* to divide the lands in controversy in that suit according to the decree therein.

The plaintiffs have established their title to the tract of land sued for in the petitory form, and defendants have not made out their plea of prescription: plaintiffs have shown, that the title of the said tract of land was decreed to be in those under whom they and their assignors hold by the judgment of the Supreme Court in the case of *O' Connor et als.* v. *Barré* in 3 M., p. 446; and as all the parties to this hold under the parties to that action, and derive their rights now claimed from those accorded to the parties thereto, and as the land in controversy in this suit was also in litigation in that of *O' Connor et als.* v. *Barré,* the judgment in the said suit in 3 Martin, is then *res judicata* between the parties to this action, and they are bound by the decree therein. 3 An., p. 236, *Delabigarre* v. *Second Municipality.* Now, by the decree in said suit in 3 M., the said tract of land sued for in the petitory form was adjudged to those under whom the present plaintiffs hold, and the latter are entitled to a judgment in their favor.

As to the three other tracts of land, to which the action of slander refers, defendants have entirely failed to make out a title, or to establish their plea of prescription, plaintiffs and those under whom they hold appearing always to have maintained their possession of the same.

We cannot, however, accord the damages prayed for in this court, for no malice has been shown in defendants. 2 Rob., p. 336, *Walden* v. *Peters and others.* The intervenors have also established their title to the land claimed by them.

It is, therefore, ordered, adjudged and decreed, that the judgment be affirmed with costs.