JEROME B. PILLOW, PLAINTIFF IN ERROR, *v.* TRUMAN ROBERTS.

Where a deed, executed in Wisconsin, and attested by the seal of a court, stamped upon the paper, instead of wax or a wafer, was offered in evidence upon a trial in Arkansas, it was properly received.

Where a deed from the sheriff, for land sold at a tax-sale, recited an assessment for taxes which remained unpaid; the advertisement of the land, and offering it for sale; its being struck down to the highest bidder, who paid the purchase-money and received a certificate; this deed ought to have been received in evidence. The law of Arkansas says, that the deed shall be evidence of the regularity and legality of the sale.

But, even if this deed had been insufficient as a proof title, it ought to have been received, in connection with proof of possession, to establish a defence under the statute of limitations.

Possession under this deed would have been sufficient proof for adverse possession.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Eastern District of Arkansas.

The circumstances of the case, and the points of law upon which it came up to this court, are fully stated in its opinion.

It was argued by *Mr. Lawrence* and *Mr. Pike*, for the plaintiff in error, and *Mr. Crittenden*, for the defendant in error.

Mr. Justice GRIER delivered the opinion of the court.

Roberts, the defendant in error, was plaintiff below, in an action of ejectment for 160 acres of land. Pillow, the defendant below, pleaded the general issue, and two special pleas: The first, setting forth a sale of the land in dispute, for taxes more than five years before suit brought: The second, pleading the statute of limitation of ten years. These pleas were overruled on special demurrer, as informal and insufficient; and the judgment of the court on this subject is here alleged as error. But as the same matters of defence were afterwards offered to be laid before the jury on the trial of the general issue and over-

ruled by the court, it will be unnecessary to further notice the pleas; as the defence set up by them, if valid and legal, should have been received and submitted to the jury on the trial. In the action of ejectment, (with the exception, perhaps, of a plea to the jurisdiction,) any and every defence to the plaintiff's recovery may be given in evidence under the general issue. And as the decision of the court on the bills of exception will reach every question appertaining to the merits of the case, it will be unnecessary to decide whether those merits were sufficiently set forth in the special pleas, to which the defendant was not bound to resort for the purpose of having the benefit of his defence.

On the trial, the plaintiff below gave in evidence a patent for the land in dispute, from the United States to Zimri V. Henry, dated 7th May, 1835; and then offered a deed from said Henry to himself, dated 10th November, 1849. This deed purported to be acknowledged before the clerk of the Circuit Court of Walworth county, in the State of Wisconsin, and was objected to, 1st. Because there was no proof of the identity of the grantor with the patentee other than the certificate contained in the acknowledgment. 2dly. Because the certificate of acknowledgment was not on the same piece of paper that contained the deed, but on a paper attached to it by wafers. And 3dly. Because the seal of the Circuit Court authenticating the acknowledgment was an impression stamped on paper, and not "on wax, wafer, or any other adhesive or tenacious substance."

The first two of these grounds of objection have not been urged in this court, and very properly abandoned as untenable. The third has been insisted on, and deserves some more attention. Formerly wax was the most convenient; and the only material used to receive and retain the impression of a seal. Hence it was said: " *Sigillum est cera impressa; quia cera, sine impressione, non est sigillum.*" But this is not an allegation, that an impression without wax is not a seal. And for this reason courts have held, that an impression made on wafers or other adhesive substance capable of receiving an impression, will come within the definition of " *cera impressa.*" If, then, wax be construed to be merely a general term including within it any substance capable of receiving and retaining the impression of a seal, we cannot perceive why paper, if it have that capacity, should not as well be included in the category. The simple and powerful machine, now used to impress public seals, does not require any soft or adhesive substance to receive or retain their impression. The impression made by such a power on paper is as well defined, as durable, and less likely to be destroyed or defaced by vermin, accident, or intention, than that made on

40*

wax. It is the seal which authenticates, and not the substance on which it is impressed; and where the court can recognize its identity, they should not be called upon to analyze the material which exhibits it. In Arkansas, the presence of wax is not necessary to give validity to a seal; and the fact that the public officer in Wisconsin had not thought proper to use it, was sufficient to raise the presumption that such was the law or custom in Wisconsin, till the contrary was proved. It is time that such objections to the validity of seals should cease. The court did not err, therefore, in overruling the objections to the deed offered by the plaintiff.

After the plaintiff had closed his testimony, the defendant offered in evidence two certain deeds from Miller Irwin, sheriff of Phillips county, and assessor and collector of taxes therein, to Richard Davidson, dated on the 22d of October, 1844; one for the north half, and the other for the south half of the quarter section of land now in dispute. On objection, the court refused to permit these deeds to be received, and sealed a bill of exceptions. The defendant then offered the same deeds to Davidson, and in connection therewith, a deed from Davidson to Armstrong, and also a deed from Armstrong to the defendant; and to accompany them with proof of possession by himself and those under whom he claims, for more than ten years, as to the south half of said land, and more than five years as to the whole of it. The plaintiff objected to this evidence. " And it was by the court ruled, that the possession of such deeds, accompanied by possession of the land, was not sufficient to prove such possession of the land to be adverse to the plaintiff and his grantor without further proof that the defendant or his grantors claimed adversely; so the court refused to permit any deeds to be read in evidence to the jury."

These bills of exception may be considered together. They present two questions, 1st. Whether, by the law of Arkansas, the deeds offered in evidence (and which were regularly acknowledged and recorded according to law) should have been permitted to go to the jury as evidence of a regular sale of the land mentioned therein for taxes. And 2dly. Whether, without regard to their validity as elements of a good legal title *per se*, they should not have been received for the purpose of showing color of title, in connection with possession by the persons claiming under them, for a length of time sufficient by law to bar the entry of plaintiff.

I. In considering these questions, it will not be necessary to set forth at length all the provisions of the revenue laws of Arkansas for compelling the payment of taxes assessed on land. A brief recapitulation of their most prominent provisions will

suffice. These laws make it the duty of the collector, on or before the 15th of September of each year, to make a list of lands assessed to persons non-resident, and the tax due thereon, with a penalty or addition of 25 per cent., and to file this list with the county clerk. He is directed, also, to set up a copy of the same at the court-house, and to publish it in a newspaper at least four weeks before the first Monday of November, giving notice that unless the taxes shall be paid on or before that day, the land will be sold. On that day, the collector is authorized to offer for sale, at public auction, such tracts or lots of land, or so much of them as will be sufficient to raise the taxes and penalty assessed and unpaid, and to continue the sales from day to day. The purchaser to pay down forthwith the amount of taxes, &c., and receive a certificate describing the land purchased, directing, if necessary, the public surveyor to lay off the part purchased by metes and bounds after one year allowed for redemption. This certificate, which is made assignable, may be presented to the collector, who is authorized to execute and deliver a deed to the holder of it for the land described therein. The follows the 96th section of the act, which is as follows:

"The deed so made by the collector shall be acknowledged and recorded as other conveyances of lands, and shall vest in the grantee, his heirs, or assigns, a good and valid title both in law and equity, and shall be received in evidence in all courts of this State as a good and valid title in such grantee, his heirs, or assigns, and shall be evidence of the regularity and legality of the sale of such lands."

The deeds offered in evidence were regularly acknowledged and recorded. It is not denied that Irwin, the grantor therein, was sheriff, assessor, and collector, of taxes in the county of Phillips, as he is described in the deed. The deed for the south half recites an assessment of the same for taxes in 1839, according to law; that the taxes remained unpaid; that the land was regularly advertised and offered for sale on the 5th of November, 1839, by auction; struck down to William Vales, who paid the purchase-money and received a certificate; that the time for redemption having long expired, and Richard Davidson become the assignee or holder of the certificate; therefore the said collector granted, &c., the said south half to said Davidson, his heirs, &c.

The deed for the north half has similar recitals, showing a tax assessed in 1840, a sale in 1841, to John Powell, and a certificate transferred by him to Davidson.

These deeds come within the description of the 96th section. They are made by a collector of the revenue; they are acknowledged and recorded according to law; they purport to be for

land assessed for taxes, and regularly sold according to law; and the law enacts that deeds, so made, shall be evidence not only of the grant by the collector, but of the regularity and legality of the sale of the land described therein.

It is easy, by very ingenious and astute construction, to evade the force of almost any statute, where a court is so disposed. We might say that the expression, " deeds *so made* by the collector," means deeds made strictly according to the requirements of all the preceding sections of the revenue law, and decide that only deeds first proved to be completely regular and legal can be received in evidence; and thus, by qualifying the whole section by such an enlarged construction of these two words, and disregarding all the others, evade the obvious meaning and intention of the law. For if you must first prove the sale to be regular and legal before the deed can be received, what becomes of the provision that the deed itself shall be evidence of these facts? Such a construction annuls this provision of the law, and renders it superfluous and useless. The evil plainly intended to be remedied by this section of the act, was the extreme difficulty and almost impossibility of proving that all the very numerous directions of the revenue act were fully complied with, antecedent to the sale and conveyance by the collector. Experience had shown, that where such conditions were enforced, a purchaser at tax-sales, who had paid his money to the government, and expended his labor on the faith of such titles in improving the land, usually became the victim of his own credulity, and was evicted by the recusant owner or some shrewd speculator. The power of the legislature to make the deed of a public officer *primâ facie* evidence of the regularity of the previous proceedings, cannot be doubted. And the owner who neglects or refuses to pay his taxes or redeem his land has no right to complain of its injustice. If he has paid his taxes, or redeemed his land, he is, no doubt, at liberty to prove it, and thus annul the sale. If he has not, he has no right to complain if he suffers the legal consequences of his own neglect.

The plain and obvious intention of the legislature is clearly expressed in this 96th section, that the deed made by a collector of taxes, as authorized in the preceding section, when acknowledged and recorded, should be received in evidence as a good and valid title; and that the recitals of the deed showing that it was made in pursuance of a sale for taxes, should be evidence of the regularity and legality of the sale under and by virtue of that act. The deed being thus made, *per se, primâ facie* evidence of a legal sale and a good title, the court were bound to receive it as such. There is nothing on the face of these deeds showing them to be irregular or void. They are each for a dif-

ferent portion of the tract or quarter section of land, having known boundaries, according to the plan of the public surveys; one being for the south half and the other for the north half of the quarter section, it required no survey to ascertain their respective figure, boundaries, or location.

II. But assuming these deeds to be irregular and worthless, the court erred in refusing to receive them in evidence, in connection with proof of possession in order to establish a defence under the statutes of limitation.

The first section of the act of limitations of Arkansas bars the entry of the owner after ten years. And the thirty-fifth section enacts that "all actions against the purchaser, his heirs, or assigns, for the recovery of lands sold by any collector of the revenue for the non-payment of taxes, and for lands sold at judicial sales, shall be brought within five years after the date of such sales, and not after."

Statutes of limitation are founded on sound policy. They are statutes of repose, and should not be evaded by a forced construction. The possession which is protected by them must be adverse and hostile to that of the true owner. It is not necessary that he who claims their protection should have a good title, or any title but possession. A wrongful possession, obtained by a forcible ouster of the lawful owner, will amount to a disseisin; and the statute will protect the disseizor. One who enters upon a vacant possession, claiming for himself upon any pretence or color of title, is equally protected with the forcible disseizor. Statutes of limitation would be of little use if they protected those only who could otherwise show an indefeasible title to the land. Hence, color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims for himself, and of course, adversely to all the world. A person in possession of land, clearing, improving, and building on it, and receiving the profits to his own use, under a claim of title, is not bound to show a forcible ouster of the true owner in order to evade the presumption that his possession is not hostile or adverse to him. Color of title is received in evidence for the purpose of showing the possession to be adverse; and it is difficult to apprehend, why evidence offered and competent to prove that fact, should be rejected till the fact is otherwise proven.

With regard to the five years limitation, we need not inquire whether the legislature intended that the action should be barred, where the purchaser at the tax-sale was not in possession. In this case, possession for more than five years by the purchaser from the collector and those claiming under him, was proved. In order to entitle the defendant to set up the bar of this statute,

after five years adverse possession, he had only to show that he and those under whom he claimed, held under a deed from a collector of the revenue, of lands sold for the non-payment of taxes. He was not bound to show that all the requisitions of the law had been complied with in order to make the deed a valid and indefeasible conveyance of the title. If the court should require such proof, before a defendant could have the benefit of this law, it would require him to show that he had no need of the protection of the statute, before he could be entitled to it. Such a construction would annul the act altogether, which was evidently intended to save the defendant from the difficulty, after such a length of time, of showing the validity of his tax-title. The case of Moore *v.* Brown, 11 How. 424, had reference to a deed void on its face, and the consequence of this fact, under the peculiar statutes of Illinois; it furnishes no authority for the decision of the court below in the present case.

The judgment of the Circuit Court is therefore reversed, and a *venire de novo* ordered.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Arkansas, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo*, and to proceed therewith in conformity to the opinion of this court.