THE UNITED STATES *vs.* J. O. CARTER, WILLIAM O.
    SMITH and MARY PARKER, Trustees under the Will
    of W. C. LUNALILO, Deceased, and HALEAKALA,
    ADAM KAEO, HINAU CHUEN YET and YEE CHU
    FAN.

## August 14, 1905.

*Construction of Will—"Dispose of":* In a power in a will to "sell
and dispose of," the words "dispose of" are not surplusage but must be
given due effect.

*Same—"Sell and Dispose of":* In the phrase "sell and dispose of"
in a will, the words "dispose of" having a broader signification than the
word "sell," amplify the latter and include other dispositions of property
such as an exchange.

*Same—Power to Sell—Exchange:* It being settled law that a power
to exchange authorizes a partition as being a species of exchange, *quaere*
if a power to sell does not authorize an exchange as being a species of
sale.

*Same—Intention of Testator:* Construction must conform to the in-
tention of the testator as ascertained from the words of the will.

*Practice—Estoppel:* Defendants claim title by prescription. Plain-
tiff and its predecessors in the possession are and were governments. The
doctrine of estoppel may be used, where the facts justify it, to ascertain
the nature of such possession, as affected by the defendant's claim.

*Same—Claim of Title by Adverse Possession Against a Government:*
Claim of title through adverse possession, ineffective against a govern-
ment, whose possession was sufficient under the doctrine of estoppels, to
defend against its grantor by an invalid deed, or whose possession was
under mere color of title.

*Action under the Statute for Possession of Land.*

J. J. Dunne, Ass't. U. S. District Attorney, for the United
States.

Smith & Lewis, Attorneys for the Trustees of the Lunalilo
Estate.

Robertson & Wilder, Attorneys for other Defendants.

DOLE, J.   The land in dispute was a part of the estate of
His late Majesty W. C. Lunalilo, held by the trustees under his

will. This will devised (quoting) "all of the real estate of "which I may die seized and possessed to three persons to be "nominated and appointed by a majority of the Justices of the "Supreme Court or the court of the highest jurisdiction in these "Hawaiian Islands, to be held by them in trust for the follow-- "ing purposes, to wit: to sell and dispose of the said real estate "to the best advantage at public or private sale and to invest "the proceeds in some secure manner until the aggregate sum "shall amount to $25,000, or until the sum realized by the said "trustees shall with donations or contributions from other "sources, amount to the said sum of $25,000. Then I order "the trustees (to be appointed as aforesaid) to expend the whole "amount in the purchase of land and in the erection of a build- "ing or buildings on the Island of Oahu, of iron, stone, brick "or other fireproof material, for the use and accommodation of "poor, destitute and infirm people of Hawaiian (aboriginal) "blood or extraction, giving preference to old people: upon such "terms, rents or charges as to the said majority of the Justices "of the Supreme Court, or court of highest jurisdiction in these "Hawaiian Islands, shall seem proper: And I hereby authorize "any two of the said trustees (to be appointed as aforesaid), "to act in all matters connected with this trust." This devise was subject to a bequest to the father of the devisor of the real and personal estate for life, and after his decease to the cousin of the devisor, His Majesty Kamehameha V, for the term of his natural life, in case he should be alive at the decease of the father of the devisor. The father of the devisor survived the said Kamehameha V and afterwards deceased and the whole estate vested in the said trustees who were duly appointed by a majority of the Justices of the Supreme Court.

"In the year 1879, these trustees entered into an agreement "with the Minister of the Interior of the Kingdom of Hawaii, "under the terms of which an exchange of lands was to be "effected between the Estate of Lunalilo, deceased, and the "Government of the Kingdom of Hawaii. This arrangement "was duly carried out, and the exchange of lands contemplated

"thereby was made; and the trustees of the Estate of Lunalilo,
"deceased, received from the Government of the Kingdom of
"Hawaii the title in fee simple to, and the possession of, a large
"tract of land; and upon their part, said trustees, in considera-
"tion of said arrangement and exchange, and of the tract ac-
"quired by them from said Government, did, on November 29th,
"1879, make, execute, and deliver to said Government, pursu-
"ant to the aforesaid arrangement and exchange, the following
"deed to a large tract of land of which the title in fee simple
"and the possession were then in said. Estate of Lunalilo, de-
"ceased." *Agreed Statement of Facts,* page 9. This land con-
veyed as aforesaid to the Government of the Kingdom of Ha-
waii included the disputed premises. The deed referred to in
the agreed statement of facts, from the trustees of the Luna-
lilo Estate to the Government.of the Kingdom of Hawaii, al-
though, as shown by its language, was intended to be signed by
all of said trustees, was signed and executed by only one of
them and was recorded in the Registry of Deeds of the said
Kingdom of Hawaii, December 10th, 1879, "and under and
"pursuant to said deed, said Government of the Kingdom of
"Hawaii then and there entered into the actual and physical
"occupation and possession, and thereafter held the actual and
"physical occupation and possession, of the tracts and parcels
"of land, and each of them, in said deed referred to and describ-
"ed, under claim of right and title in fee simple in itself and
"under the aforementioned deed." *Agreed Statement of Facts,*
page 12.

"On February 13th, 1874, David Kalakaua was inaugurated
"King of the Kingdom of Hawaii. On or about April 4th,
"1882, said Kalakaua executed and delivered to one S. Hinau
"a certain deed   *   *   *   Thereupon, the said S. Hinau took
"and had the actual and physical occupation of said premises
"within perceptible and definite boundaries" (Agreed State-
ment of Facts, p. 12), which premises are the same as claimed
by the plaintiff in this action. The said S. Hinau held such

premises openly, continuously, uninterruptedly and under claim
of right and title in himself under such deed until his death,
and after him, the defendant heirs at law held the same in like
manner until the present time; the defendants, Chuen Yet and
Yee Chu Fan, being defendants in possession of a portion of
the said premises as lessees of the said heirs of the said S. Hi-
nau.

The Provisional Government of the Hawaiian Islands suc-
ceeded in 1893 to the right of the Government of the Kingdom
of Hawaii and to the occupation and possession of its landed
estate. The Republic of Hawaii succeeded in 1894 to the rights
and to the occupation and possession of the landed property of
the Provisional Government of the Hawaiian Islands, and upon
the annexation of the Hawaiian Islands to the United States of
America, in 1898, all of the landed estate of the Republic of
Hawaii was ceded to the United States.

Upon the institution of this suit, the present trustees of the
will of said W. C. Lunalilo, disclaimed any and all right, title,
interest, estate and claim in and to the land and premises in
dispute. The other defendants in their answer claim to own
the disputed premises "in fee simple by title by possession, inas-
"much as they and their ancestor have, since the year 1882, had
"the definite, exclusive, open, notorious, continuous and adverse
"possession of said premises under claim of right in themselves,"
and that the plaintiff herein has no right, title or interest there-
in. It is not claimed that the deed referred to from Kalakaua
to S. Hinau is a valid deed but it is referred to by the contest-
ing defendants merely as showing the time at which their ad-
verse possession began to run.

The defendants make the point that the deed from one of
the trustees of the Lunalilo Estate to the Government of the
Kingdom of Hawaii was executed in violation of the terms of
the trust under which such trustee purported to act,—the power
of disposing of land conferred upon the trustees by the will
being "to sell and dispose of the said real estate to the best ad-
"vantage at public or private sale and to invest the proceeds

"in some secure manner," and that said deed being in reality a deed of exchange was not within the terms of the power referred to, it being contended that the words "to sell and' dispose of" mean no more than the words "sell and convey," and that a power to sell does not authorize an exchange.

As to the force of the words "dispose of," in the phrase "sell and dispose of," no very clear precedent has been submitted nor have I been able to find one.

In *Brassey v. Chalmers,* 16 Beav. 223, "power was given to "trustees of real estate 'to sell and dispose thereof at their dis-" 'cretion.' * * * The case was heard before Sir John "Romily, Master of the Rolls. His opinion was that the power "was a mere power to sell, the words 'dispose thereof' being "surplusage and that it did not authorize partition." The question of exchange did not arise in this case. Upon appeal the question as to the authority under the power to partition was not considered, partition proceedings having been brought.

In the case of *Phelps v. Harris,* 101 U. S. 370, 381, the court said: "Now, whilst it may be true that when the words 'disposed of' are used in connection with the word 'sell' in the phrase 'to sell and dispose of,' they may often be construed to mean a disposal by sale; it does not necessarily follow that when power is given generally, and without qualification by associated words, to dispose of property, leaving the mode of disposition to the discretion of the agent, that the power should not extend to a disposal by barter or exchange, as well as to a disposal by sale. The word is *nomen generalissimum,* and standing by itself, without qualification, has no technical significcation. Taking the whole clause in the codicil together, it is equivalent to an authority to dispose of the property as the trustee should deem most for the interest of his children; and this would include the power to barter or exchange as well as the power to sell."

In this case the trustee held under a deed made by his wife, which gave him the "power to sell and exchange said property," etc., and under a will which gave him "full power to dispose

·of all or any portion of said property which might fall to said children and invest the proceeds in such manner as he might think proper for their benefit." The court decided in this case that the trustee had power to make partition.

The same case has elsewhere, on page 380, the following:

"The expression 'to dispose of' is very broad, and signifies more than 'to sell.' Selling is but one mode of disposing of property. It is argued, however, that the subsequent direction to *invest the proceeds* indicates that a· sale was meant. But this does not necessarily follow. Proceeds are not necessarily money. This is also a word of great generality. Taking the words in their ordinary sense, a general power to dispose of land or real estate and to take in return therefor such proceeds as one thinks best, will include the power of disposing of them in exchange for other lands. It would be a disposal of the lands parted with; and the lands received would be the proceeds."

The question whether the words "sell and exchange" conferred the power to partition was discussed in many cases until the court in the case of *In re Frith and Osborne,* L. R., 3 Ch. Div., 618, finally decided the question in favor of such power, and this on the ground that a partition was a species of exchange. There does not appear to have been any conspicuous discussion of the question whether the words "sell and dispose of" confer the power to exchange. I do not attach any great authority to the case of *Brassey v. Chalmers, supra,* as to this point, the question of exchange not being in issue in that case and the judge's opinion that the words "dispose of" were mere surplusage not being considered on appeal. In construing a will I should not in any case accept the ruling that the words "dispose of" were surplusage except on very high authority, for, as is said in the case of *Phelps v. Harris, supra,* they are words of very broad effect and signify more than the words "to sell", and although that case speaks very conservatively in regard to the extent of the phrase "sell and dispose of", saying that it may often be construed to mean a disposal by sale and adding

that the words "to dispose of", standing alone and leaving the mode of disposition to the discretion of the agent, extend to a disposal by a barter and exchange as well as to a disposal by sale, entirely evading any further discussion of the former expression as to the force of the words "dispose of", it certainly leaves the question entirely open.

"In construing a will, the words and expressions used are to be taken in their *ordinary, proper* and *grammatical* sense;— unless upon applying them to the facts of the case, an ambiguity or difficulty of construction, in the opinion of the court, arises." *Hawkins, Construction of Wills,* 2.

There is no resulting ambiguity in the application of the ordinary construction of the words "dispose of" in this will. They are not technical words, or if they are, their technical application corresponds to their popular meaning.

"In the interpretation of a will, it is our duty to give effect to all the words, without rejecting or controlling any of them, if it can be done by a reasonable construction, not inconsistent with the manifest intent of the testator." *Dawes, Judge, &c., v. Swan & Al.,* 4 Mass., 208, 215.

I find no sufficient authority in the cases for rejecting the ordinary meaning of the words "dispose of" and am disposed to give them their full force, which, under the authority of *Phelps v. Harris, supra,* would so far as they stand alone make them include authority to exchange. I am prepared to go a step further and recognize in them, in spite of their standing with the word "sell", all the force that they are given in *Phelps v. Harris,* standing alone. Instead of being surplusage these words having a broader signification than the words "to sell" would seem to amplify the limited meaning of the word "sell" and to include other dispositions of property. *Platt v. U. P. R. R. Co.,* 99 U. S., 48, 59, 61. It is a question whether the mere authority to sell may not include the authority to exchange on the analogy of the case of *In re Frith and Osborne, supra;* for there it was ruled that a power to exchange included a power to partition, partition being a species of exchange. Much more

forcibly may it be argued that a power to sell includes a power to exchange, exchange being a species of sale. Of course the main thing to be sought for in the construction of a will is to arrive at the intention of the testator, and this must be found primarily from the words of the will. As it was the object of the testator in this case to acquire land for the erection of a home for his indigent countrymen, which should be done from the proceeds of his real estate, it would seem to be an arbitrary construction of the words "dispose of" in the will which would defeat their broad meaning and thus prevent the trustees from making a direct exchange but compel them to sell certain lands which could have been exchanged for the tract desired, and then to devote the proceeds of said sale to the purchase of the necessary tract, land acquired by exchange being "proceeds" of such disposal, according to *Phelps v. Harris, supra.* There is nothing in the words of the will to compel such a course. I find, therefore, that the will conferred authority on the trustees to acquire land for the purpose of erecting a home for Hawaiians, by exchange as well as by purchase.

The main question in this case is whether the possession of the plaintiff and its predecessors was such that the adverse possession of the contesting defendants has failed to create a title by prescription under the rule of *nullum tempus occurrit regi,* or has such possession of the respective governments been insufficient to bring the case within that rule.

Counsel for the plaintiff introduced authorities in support of the doctrine that "when the party undertakes to execute a power, but, by mistake, does it imperfectly, equity will interpose to carry his very intention into effect, and that too, in aid of those who are peculiarly within its protective favor, that is, creditors, purchasers, wives and children." *1 Story's Equity Jurisprudence,* Sec. 170, p. 194. "But where there is a defect of substance in the execution of the power, such as the want of co-operation of all the proper parties in the act, there, equity

will not aid the defect." *Id.*, 175; *Beatty v. Clark,* 20 Cal., 11, 35.

As this action cannot be regarded as a suit in equity, this point would not apply. Moreover, under the rule stated in the last citation, there being a want of co-operation of the necessary parties to the deed to the Government of the Kingdom of Hawaii above referred to, equity could not aid the defect even if this was a proceeding in equity. However, under the circumstances in which all of the "trustees entered into an agreement "with the Minister of the Interior of the Kingdom of Hawaii "under the terms of which an exchange of lands was to be effect-"ed between the Estate of Lunalilo, deceased, and the Govern-"ment of the Kingdom of Hawaii" (Agreed Statement of Facts, p. 9), and this arrangement was carried out and the exchange of lands was made accordingly, and the trustees of the Estate of Lunalilo received from the Government of the Kingdom of Hawaii the land negotiated for, and delivered to said Government the possession of the land intended to be given in exchange therefor, and there being no evidence that such arrangement was ever afterwards questioned or disturbed by the trustees of the Lunalilo Estate, it would appear that all of the trustees had acquiesced in the arrangement and were estopped from contesting it. The circumstances, including the fact of the immediate registration of the deed by one trustee, leave no room for doubt that all of the trustees were fully informed of the transaction.

"If a person having a right, and seeing another person about to commit, or in the course of committing an act infringing upon that right, stands by in such a manner as really to induce the person committing the act, and who might otherwise have abstained from it, to believe that he assents to its being committed, he cannot afterwards be heard to complain of the act. This, as Lord Cottenham said in the case already cited, (*Duke of Leeds v. Earl Amherst,* 2 Ph. 117, 123), is the proper sense.

of the term 'acquiescence', and in that sense may be defined as quiescence under such circumstances as that assent may be reasonably inferred from it, and is no more than an instance of the law of estoppel by words or conduct." *DeBussche v. Alt,* L. R. 8 Ch. Div., 286, 314.

"In the jurisprudence of all civilized nations the doctrine is found, 'that if a man, either by words or by conduct, has inti-'mated that he consents to an act which has been done, and that 'he will offer no opposition to it, although it could not have been 'lawfully done without his consent, and he thereby induces 'others to do that from which they might have otherwise ab-'stained, he cannot question the legality of the act he has so 'sanctioned, to the prejudice of those who have so given faith 'to his words, or to the fair inference to be drawn from his con-'duct'." *2 Herman, Estoppel & Res Judicata,* Sec. 733; *Dickerson v. Colgrove,* 100 U. S., 578, 580-1.

The doctrine of estoppels is available in courts of law and in actions of ejectment. The applicability of the theory of estoppel in this case is rather indirect than direct, its value being to show the status of the possession of the Government of the Kingdom of Hawaii at the time of the disseizin by the ancestor of the defending heirs; which possession was such that the trustees of the Lunalilo Estate would have been estopped if they had brought proceedings for the recovery of the premises purported to have been conveyed by the invalid deed of one of them.

The benefit of such estoppel enures to the privies of the party in whom it first vests, in this case, the Provisional Government of the Hawaiian Islands, the Republic of Hawaii and the United States, "for when an estoppel works on the interest of the land, it runs with the land into whose hands soever the land comes; and an ejectment is maintainable upon the mere estoppel." *Bigelow on Estoppel,* (3rd ed.) 328.

If I am right in this view of the relation of the doctrine of estoppels to this case, the possession of the plaintiff and its

right of possession, is unassailable by a claim of title by prescription under the allegations and evidence.

There is, moreover, another ground against the claim of the defendants that their adverse possession has run only against the trustees and is not affected by the possession of the plaintiff, and that is that the possession itself under color of title is sufficient for the maintenance thereof against trespassers.

"Color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims for himself, and of course adversely to all the world." *Pillow v. Roberts,* 54 U. S., 477.

"It may be that the complaint fails to show a title in the plaintiff, but it does show possession and a right to the possession as against the defendant. And the authorities cited by the appellant's counsel, and others that might be cited, show that possession is sufficient to enable a party to recover in ejectment, against a wrong-doer intruding upon such possession. In the case of *Hoey v. Furman,* 1 P. St., 295, it was held that a plaintiff who was himself a wrong-doer, and had wrongfully entered upon land and disseized the rightful owner, might still recover in ejectment against a subsequent wrong-doer who entered upon his possession, although such plaintiff had not yet acquired any prescriptive right as against the real owner. The same rule prevails in respect to actions to defend the possession of personal property. The wrong-doer who, without any right, invades the peaceable possession of another, cannot defend successfully by showing that such other had not a perfect title. The actual possession is sufficient evidence of title against every one who cannot show a better right. There seems no reason why the same rule does not prevail in respect to real estate. It is reasonable, and tends to promote justice and preserve the peace and good order of society. For the opposite rule would encourage wrong-doers to invade the peaceable possession of others, in all cases where the title was imperfect." *Bates v. Campbell,* 25 Wisc., 613, 615-6.

The case is a peculiar one in some ways. I have not been able to find any other quite analagous to it, but I am of the opinion that the possession of the Kingdom of Hawaii and its successors was sufficient, independently of the question of estoppel, for them to maintain an action for the possession of the premises in dispute, and, being such a possession, the trespass and adverse possession of the defendants was against the right of possession of such party and its successors, and they being governments, the adverse possession of the defendants has been of no avail in creating a title by prescription.

In view of the foregoing considerations and authorities, I award the premises in dispute to the plaintiff.