DAVIS, Circuit Judge,
concurring:
“Of course, determining whether a regulation or statute is ambiguous presents a legal question, which we determine de novo.” Humanoids Group v. Rogan, 375 F.3d 301, 306 (4th Cir.2004). To say, as our good colleague says in dissent, that the majority’s legal conclusion that § 9658 is ambiguous must be “supported by the plain language of the statute itself,” post, at 447, finds no support in Supreme Court or Fourth Circuit authority. “Plain language” analysis does no such work. See Watt v. Alaska, 451 U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) (“[T]he plain-meaning rule is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.”) (citation and internal quotation marks omitted). Moreover, in any event, as the majority opinion makes clear, “the meaning of statutory language, plain or not, depends on context.” Holloway v. United States, 526 U.S. 1, 7, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999) (quotations omitted). Judge Floyd’s careful analysis is faithful to this important, overarching principle, and I am pleased to join his fine opinion in full.
THACKER, Circuit Judge,
dissenting:
With all due respect to my friends in the majority, I must dissent. The majority essentially concludes § 9658 preempts two categories of state statutes: statutes of limitations and statutes of repose. However, in my view the plain and unambiguous language of § 9658 indicates only statutes of limitations were intended to be preempted. Even if the preemptive effect of § 9658 were susceptible to two interpretations, a presumption against preemption would counsel that we should limit § 9658’s preemptive reach to statutes of limitations without also extending it to statutes of repose.
The relevant legislative history underscores this plain reading of the statute, and a plain reading of § 9658 aligns with general, deferential principles of legislative compromise that counsel against a liberal reading of the statute. Accordingly, I would affirm.
*446 I.
Although this case arises in the context of federal preemption, at its core, it is about statutory interpretation. The key issue is whether the phrase “statute of limitations” as used in the 1986 amendments to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (“CERCLA”), Act of Oct. 27, 1986, Pub.L. No. 99-499, 100 Stat. 1613 (“1986 Amendments”), and codified in 42 U.S.C. § 9658, preempts North Carolina’s 10-year statute of repose.
A.
Plain Meaning
As in all matters of statutory interpretation, our starting point is an analysis of the statutory text. Chris v. Tenet, 221 F.3d 648, 651 (4th Cir.2000). We must begin by asking “whether the language at issue has a plain and unambiguous meaning....” Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). This first step may also be oiir last: if the statutory language has a plain and unambiguous meaning, “we must apply the statute according to its terms.” Carcieri v. Salazar, 555 U.S. 379, 387, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009).
In determining whether the language has a plain and unambiguous meaning, “we consider the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Johnson v. Zimmer, 686 F.3d 224, 232 (4th Cir.2012) (internal quotation marks omitted). If certain terms are undefined in the relevant statutory provisions, they “are typically interpreted as taking their ordinary, contemporary, common meaning.” Id. (internal quotation marks omitted).
1.
Language of Section 9658
CERCLA § 9658 governs actions under state law for damages from exposure to hazardous substances, and provides that generally, “the statute of limitations established under State law shall apply----”42 U.S.C. § 9658(a)(2). But the statute also provides the following exception to this general rule:
[I]f the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
Id. § 9658(a)(1). Of critical import here, the statute defines the “applicable limitations period” as “the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.” Id. § 9658(b)(2) (emphasis supplied). Similarly, the statute defines the state “commencement date” as “the date specified in a statute of limitations as the beginning of the applicable limitations period.” Id. § 9658(b)(3) (emphasis supplied). The “federally required commencement date” provides an enhanced version of the traditional discovery rule and is defined as “the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages ... were caused or contributed by the hazardous substance .... ” Id. § 9658(b)(4).[1] Thus, *447 § 9658 will preempt state law where a state statute of limitations begins to run before it would have run under the federally required commencement date.
The key question then is whether the meaning of § 9658, by its reference to “statute of limitations,” is plain and unambiguous. The majority answers that question by concluding that the phrase “statute of limitations” is ambiguous, and thus encompasses both statutes of limitations and statutes of repose. Ante at 442^13 (determining that “ § 9658’s text [is] capable of at least two interpretations, preventing it from being straightforwardly categorized as ‘plain and unambiguous.’”). The majority’s conclusion, however, is not supported by the plain language of the statute itself.
2.
Modern and Historical Context
The difficulty presented in this case springs from the definitions of “statutes of limitations” and “statutes of repose” in use today versus their historical understanding.
Today, we understand a statute of limitations, on the one hand, to be “a procedural device that operates as a defense to limit the remedy available from an existing cause of action.” First United Methodist Church of Hyattsville v. U.S. Gypsum Co., 882 F.2d 862, 865 (4th Cir.1989); see also Black’s Law Dictionary 1546 (9th ed.2009) (defining statute of limitations as “A law that bars claims after a specified period; specif., a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered).”). In other words, a statute of limitations “extinguishes the right to prosecute an accrued cause of action after a period of time.” Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co., 419 F.3d 355, 363 (5th Cir.2005) (internal quotation marks omitted). Statutes of limitations typically begin to run either on the date of the plaintiffs injury, or on the date the injury is first discovered or should have been discovered with reasonable diligence. See id.
A statute of repose, on the other hand, “creates a substantive right in those protected to be free from liability after a legislatively-determined period of time.” First United Methodist, 882 F.2d at 866; see also Black’s Law Dictionary 1546 (9th ed.2009) (defining statute of repose as “[a] statute barring any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury.”). A statute of repose “abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued.” Burlington, 419 F.3d at 363 (internal quotation marks omitted). Statutes of repose typically begin to run after “the occurrence of some event other than the injury which gave rise to the claim[,]” McDonald v. Sun Oil Co., 548 F.3d 774, 779 (9th Cir.2008) (internal quotation marks omitted), such as an act by a defendant or the manufacture of a product, see Burlington, 419 F.3d at 363.
The motivations behind statutes of limitations and statutes of repose are different as well. For example, “[statutes of limitations are motivated by considerations of fairness to defendants and are intended to encourage prompt resolution of disputes by providing a simple procedural mechanism to dispose of stale claims.” First *448 United Methodist, 882 F.2d at 866. Thus, they can be equitably tolled where, for example, a defendant fraudulently conceals a plaintiffs injury. Id. Statutes of repose are motivated by “considerations of the economic best interests of the public as a whole” and reflect “a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists.” Id. Thus, unlike statutes of limitations, statutes of repose are substantive grants of immunity from liability. Id.
But this clear distinction between statutes of limitations and statutes of repose is of modern vintage. Historically, the phrase “statute of repose” encompassed a broad range of time-bar statutes that limited litigation, and “provided peace, or ‘repose,’ to potential litigants.... ” Wenke v. Gehl Co., 274 Wis.2d 220, 682 N.W.2d 405, 423 (2004); see also id. (“Early treatise writers and judges considered time bars created by statutes of limitations, escheat and adverse possession as periods of repose. As the courts began to modify statutory limitations by applying the ‘discovery rule,’ legislatures responded by enacting absolute statutes of repose.” (emphasis omitted) (quoting Reynolds v. Porter, 760 P.2d 816, 819-20 (Okla.1988))).
Indeed, the earliest reference to “statutes of repose” in this circuit appears in Bartlett v. Ambrose, 78 F. 839, 842 (4th Cir.1897), in which we cited the Supreme Court’s language in Pillow v. Roberts, 54 U.S. 472, 13 How. 477, 14 L.Ed. 228 (1851), proclaiming, “[statutes of limitations] are statutes of repose, and should not be evaded by a forced construction.”
Put simply, what we today would call statutes of limitations were historically considered, along with other statutory time-bars, to provide repose to litigants and were thus, generally, statutes of repose. These overlapping definitions, however, have evolved into the distinct definitions we have today.
3.
“Statute of Limitations” in 1986
Using the dictionary definition of “statute of limitations” available to Congress in 1986, it is clear that there is no ambiguity as to the meaning of that term at the time § 9658 was enacted. The Fifth Edition of Black’s Law Dictionary (the “Fifth Edition”), the most recent edition available to Congress in 1986 at the time CERCLA was amended to include § 9658, had not yet adopted the separate, modern definitions for both “statutes of limitations” and “statutes of repose,” but was nonetheless in accord with our modern understanding where it mattered.
The Fifth Edition of Black’s Law Dictionary defined “statute of limitations” as follows:
A statute prescribing limitations to the right of action on certain described causes of action or criminal prosecutions; that is, declaring that no suit shall be maintained on such causes of action, nor any criminal charge be made, unless brought within a specified period of time after the right accrued. Statutes of limitation are statutes of repose, and are such legislative enactments as prescribe the periods within which actions may be brought upon certain claims or within which certain rights may be enforced. In criminal cases, however, a statute of limitation is an act of grace, a surrendering by sovereign of its right to prosecute. Also sometimes referred to as “statutes of repose.”
Black’s Law Dictionary 835 (5th ed.1979).[2] This definition is clearly restricted to time *449 limitations that begin to run after the right to bring the cause of action accrues, that is, after the injury or its discovery, as opposed to after a predetermined period of time, regardless of whether the action otherwise accrues. It, thus, confirms that statutes of limitations were but a subset of statutes of repose and were therefore “sometimes referred to as ‘statutes of repose.’ ” Id.
Notably, this definition does not adopt the inverse proposition that all statutes of repose are also statutes of limitation. Therefore, based on the definition available to Congress at the time of the 1986 Amendments, it is clear that Congress necessarily did not intend to include statutes of repose as within the definition of “statutes of limitations.”
At the time of the enactment of § 9658 in 1986, then, the only possible ambiguity may have been the meaning of “statute of repose” and whether that term had fully matured into its modem definition. But Congress chose not to include “statute of repose” in § 9658, and thus we need not trouble ourselves with what Congress may have thought it meant.[3]
B.
The North Carolina Statute
After discerning the plain meaning of § 9658, we must decide whether that plain meaning preempts the application of North Carolina General Statute § 1-52(16) to Appellants’ state law claim. As explained, in 1986, statutes of limitations were understood to be statutes that limited the right to maintain an action based on when the injured party accrued the right. North Carolina’s three-year statute of limitations is just such a restriction and is preempted by § 9658. North Carolina’s 10-year statute of repose is not; therefore, it survives beyond the 1986 Amendments.
North Carolina General Statute § 1-52(16) contains both a statute of limitations and a statute of repose. The first sentence of § 1-52(16) provides a three-year statute of limitations for personal injuries and property damages based on a traditional form of the discovery rule. N.C. Gen.Stat. § 1-52(16) (“Within three years an action ... for personal injury or physical damage to claimant’s property, the cause of action ... shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs.”).
Section 1-52(16) also clearly provides a substantive 10-year statute of repose that declares “no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.” Id. § 1-52(16).
But only the three-year provision specifies a time period to bring a cause of action after the right has accrued by operation of the discovery rule. The 10-year provision specifies a time restriction regardless of whether the right to bring the cause of action could have otherwise accrued. Thus, only the former three-year provision falls within the definition of “statute of *450 limitations” available to Congress in 1986. See Black’s Law Dictionary 835 (5th ed.1979) (defining “statute of limitations” as “[a] statute ... declaring that no suit shall be maintained ... unless brought within a specified period of time after the right accrued”). Therefore, only the three-year provision may be considered in order to determine North Carolina’s “applicable limitations period.” See 42 U.S.C. § 9658(b)(2) (defining “applicable limitations period” as “the period specified in a statute of limitations”).
Section 9658 preempts state law where state law does not accord plaintiffs the benefit of the federally required commencement date found in § 9658(b)(4). Because North Carolina’s three-year provision imposes the earlier, traditional discovery rule to commence the applicable limitations period, and not the commencement date mandated by § 9658, § 9658 preempts North Carolina’s statute of limitations, but not its statute of repose.
In contrast, although § 9658 is clearly applicable to preempt the running of North Carolina’s statute of limitations, any application to North Carolina’s statute of repose is untenable. A simple attempt to map § 9658 onto the North Carolina statute of repose illustrates the point. To trigger § 9658(a)(1), the state “commencement date” must be “earlier than the federally required commencement date.” 42 U.S.C. § 9658(a)(1) (“[I]f the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date....”). Importantly, the commencement date is defined as the beginning of the period in which a civil action may be brought. See id. § 9658(b)(2)-(3).[4] But the North Carolina statute of repose does not provide a beginning or “commencement date” as that term is defined. Rather, it provides an outer limit, after which no cause of action may accrue. Because North Carolina’s statute of repose does not create the beginning of the applicable limitations period, § 9658 cannot graft neatly — or at all— onto the North Carolina statute of repose so as to preempt its enforcement.
C.
Legislative History
Given the plain meaning of the statute, we need not look to legislative history. But, even if we did, the legislative history of § 9658 also clearly supports the conclusion that Congress was aware that statutes of limitations were a distinct category of time-bar statutes and specifically chose only to preempt those statutes and not other statutory time bars such as statutes of repose.
As a part of the initial enactment of CERCLA in 1980, Congress commissioned a study group of expert lawyers “to determine the adequacy of existing common law and statutory remedies in providing legal redress for harm to man and the environment caused by the release of hazardous substances into the environment....” CERCLA, Pub.L. No. 96-510, § 301(e)(1), 94 Stat. 2767 (1980). The study group responded with a detailed report and recommendations for improving remedies under CERCLA. See Superfund Section 301(e) Study Group, 97th Cong., Injuries and Damages from Hazardous Wastes— Analysis and Improvement of Legal Remedies (Comm. Print 1982) (the “301 (e) Report”).
*451 The 301(e) Report contained ten categories of recommendations, the ninth of which included recommendations for “Statutes of Limitations.” The 301(e) Report outlined the rationale for implementing an enhanced discovery rule in CE RO-LA actions, id. at 28-30, and provided its recommendation, id. at 240-41. The 301(e) Report’s recommendation with regard to statutes of limitations, in its entirety, was as follows:
A small number of states still follow the so-called traditional rule that the cause of action accrues from the time of exposure. Another small number of states has not as yet clearly adopted either the traditional or the discovery rule. Since many of the hazardous wastes are carcinogens, mutagens, teratogens or substances with delayed impact on different organs or the central nervous system, the latency period for the appearance of injury or disease is likely to be extended for thirty years or more. In states that have not clearly adopted the discovery rule (i.e., that the cause of action accrues from the time the plaintiff discovered or reasonably should have discovered the injury or disease) the cause of action will usually be time barred when the plaintiff discovers his hurt. The Study Group recommends that all states that have not already done so, clearly adopt the rule that an action accrues when the plaintiff discovers or should have discovered the injury or disease and its cause. The Recommendation is intended also to cover the repeal of the statutes of repose which, in a number of states have the same effect as some statutes of limitation in barring plaintiffs claim before he knows that he has one.

Id.

Two key takeaways can be culled from the 301(e) Report’s recommendation: (1) an enhanced discovery rule should apply to statutes of limitations; and (2) statutes of repose are separate and distinct from statutes of limitations.
First, the 301(e) Report clearly informed Congress that an enhanced discovery rule should apply to statutes of limitations in all states for injuries caused by hazardous substances. In essence, the 301(e) Report took the position that a plaintiffs statute of limitations should not begin to run until the plaintiff both discovers or should have discovered the injury, and realizes that his or her injury was caused by the hazardous substance. 301(e) Report at 241 (“The Study Group recommends that all states that have not already done so, clearly adopt the rule that an action accrues when the plaintiff discovers or should have discovered the injury or disease and its cause.”). Congress agreed. In enacting § 9658, Congress implemented this exact formulation of the discovery rule in its definition of the “federally required commencement date.” 42 U.S.C. § 9658(b)(4)(A).[5]
Second, the 301(e) Report put Congress on notice that statutes of limitations are distinct time-bars, separate from statutes of repose, even if they have the same effect. The 301(e) Report recommended to Congress not only that the aforementioned enhanced discovery rule should be applied to state statutes of limitations, but also recommended that state statutes of repose be repealed. 301(e) Report at 241 (“The Recommendation is intended also to *452 cover the repeal of the statutes of repose which, in a number of states have the same effect as some statutes of limitation in barring plaintiffs claim before he knows that he has one.”). By the plain language of § 9658, Congress disagreed.
Based on the 301(e) Report, Congress was clearly on notice that statutes of repose, separate and distinct from statutes of limitations, could prohibit recovery by certain plaintiffs, and yet chose to leave § 9658 completely replete of any reference to such statutes.
D.
Legislative Compromise
The majority notes that CERCLA is a remedial statute and thus deserves broad construction to accomplish its objectives. Ante at 443. This is true. But the plain meaning of the statute and the role of legislative compromise restrain the application of the remedial canon of statutory interpretation. See 3550 Stevens Creek Assocs. v. Barclays Bank of Cal., 915 F.2d 1355, 1363 (9th Cir.1990) (noting that even if courts give CERCLA a “broad interpretation to accomplish its remedial goals[,]” courts must nonetheless “reject a construction that [CERCLA] on its face does not permit, and the legislative history does not support.”); Blake A. Watson, Liberal Construction of CERCLA under the Remedial Purpose Canon: Have the Lower Courts Taken a Good Thing too Far?, 20 Harv. Envtl. L.Rev. 199, 300-01 (1996) (“It has been firmly established that the fact that a statute is ‘highly remedial in nature’ and ‘entitled to a liberal construction’ nevertheless ‘does not justify ignoring plain words of limitation.’ ”) (quoting MacEvoy Co. v. United States, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944)); id. at 301 (“[T]he remedial purpose canon has diminished utility when the interpretive issue focuses on provisions of CERCLA that are the product of compromise. Such compromises can be found in both CERCLA’s text and its enactment history.”).[6]
In passing the 1986 Amendments, Congress did not arm toxic tort plaintiffs with every possible advantage nor remove every obstacle from their path to recovery. Rather, the 1986 Amendments reflected the process of legislative compromise based, in part, on the 301(e) Report’s analysis and recommendations. As mentioned, the 301(e) Report was commissioned to evaluate existing statutory and common law remedies for environmental harms caused by hazardous substances and to provide corresponding recommendations. CERCLA, Pub.L. No. 96-510, § 301(e)(1), (4), 94 Stat. 2767 (1980).
But Congress did not implement every recommendation supplied by the 301(e) Report. In fact, quite to the contrary. For example, in its “Ninth Recommendation,” the 301(e) Report recommended a variety of changes to actions arising under state law. 301(e) Report, 240-51. The 301(e) Report recommended states adopt an enhanced discovery rule, id. at 241; repeal statutes of repose, id.; adopt liberal joinder rules for plaintiffs, id. at 242; adopt a system of joint and several liability with a de minimis exception, id. at 243; adopt liberal joinder rules for defendants, id. at 244; implement their own evidentiary presumptions, id. at 245; and adopt a theory of strict liability for hazardous waste activities, id. at 245. Congress *453 could have drafted the 1986 Amendments to implement any or all of the 301(e) Report’s recommendations by preempting state law wherever it fell short of the 301(e) Report’s recommendations. But the only revision affecting state law Congress chose to implement in the section explicitly covering state procedural reform was the enhanced discovery rule via the federally required commencement date. See 1986 Amendments, Pub.L. No. 99-499, § 203, 100 Stat. 1613 (1986). Notably, Congress was given the opportunity to repeal statutes of repose, but chose not to.
That § 9658 reaches state statutes of limitations but not statutes of repose strikes a balance between harmonizing certain procedural matters in toxic tort cases and allowing states to continue to regulate their own substantive areas of law. It is the prerogative of Congress to strike that balance. See Hanford Downwinders Coalition, Inc. v. Dowdle, 71 F.3d 1469, 1484 (9th Cir.1995) (concluding that even when the application of a CERCLA provision leads to “harsh results[,]” courts should not disrupt Congress’s balancing of the interests involved).
E.
Presumption Against Preemption
While at its most elemental this case concerns a matter of statutory interpretation, that task arises in the context of federal preemption. “Courts generally apply a presumption against preemption in fields the states traditionally regulate.” Nat’l City Bank of Ind. v. Turnbaugh, 463 F.3d 325, 330 (4th Cir.2006). Just as we presume “Congress does not cavalierly pre-empt state-law causes of action[,]” Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), we should also presume that Congress does not cavalierly preempt state substantive rights to be free from those state-law causes of action. Even “[fjederal laws containing a preemption clause[,]” such as § 9658, “do not automatically escape the presumption against preemption.” Id. Rather, “[w]here the text of a preemption clause is open to more than one plausible reading, courts ordinarily ‘accept the reading that disfavors pre-emption.’ ” Riegel v. Medtronic, Inc., 552 U.S. 312, 335, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005)).
Here, the ability of a state to create a substantive right to be free from liability under its own state tort law is unquestionably a traditional field of state regulation. Therefore, the general presumption against preemption likewise weighs against giving § 9658 overly broad preemptive effect. See Barnes ex rel. Barnes v. Hoppers, Inc., 534 F.3d 357, 363 (5th Cir.2008) (discussing the preemptive effect of § 9658 and noting that “[i]f the extent of Congress’s preemptive intent is unclear, the presumption favors a finding of limited preemption.”); see generally Marsh v. Rosenbloom, 499 F.3d 165, 178 (2d Cir.2007) (concluding CERCLA did not preempt certain Delaware statutes in part because arguments in favor of greater monetary recovery “alone are insufficient to justify displacement of state law”).
II.
CERCLA and the 1986 Amendments clearly put a thumb on the scales in favor of assisting plaintiffs who may have suffered injuries due to toxic substances. But where Congress by plain and unambiguous language has indicated how much pressure it wishes to apply in that regard, it is not the duty of this court to press harder and shift that balance. Rather, it *454 is the prerogative of Congress to strike that legislative compromise.
In sum, because I believe the plain language of § 9658 preempts North Carolina’s statute of limitations, but not its statute of repose, I would affirm the decision of the district court.

. As noted, we now define a statute of limitations as "[a] law that bars claims after a *449 specified period; specif., a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered).” Black’s Law Dictionary 1546 (9th ed.2009).

. Indeed, the study group commissioned by Congress to provide recommendations for the 1986 Amendments clearly understood statutes of repose to be different and distinct from statutes of limitations, as discussed infra, and other treatises recognized the distinction at least as early as 1987. See Black's Law Dictionary 1546 (9th ed.2009) (quoting 54 C.J.S. Limitations of Actions § 4 (1987)).

. The North Carolina statute of limitations establishes the beginning of that period as the point at which "bodily harm ... or physical damage ... becomes apparent or ought reasonably to have become apparent...." N.C. Gen.Stat. § 1-52(16).

. The "federally required commencement date” is defined, in relevant part, as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages ... were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A).

. Even if CERCLA, as enacted in 1980, was the product of an 1 lth-hour compromise and, thus, also lends itself to a liberal construction for that reason as the majority seems to imply, ante at 438, 443-44, the provision at issue in this case, § 9658, was passed years later in 1986 after careful study and deliberation. The circumstances surrounding § 9658’s passage certainly do not invite departure from its plain language.