CANNON et al. v. HART et al.

No. 1322.

Court of Appeal of Louisiana. First Circuit.

May 8, 1934.

John Fred Odom, of Baton Rouge, for appellants.

C. C. Bird, Jr., and Paul G. Borron, both of Baton Rouge, for appellee.

LE BLANC, Judge.

The plaintiffs in this suit; Mrs. Josephine B. Cannon, born Arceneaux, Dennis Kelleher, Mrs. Emma Sevier, born Kelleher, and Mrs. Mary M. Stannard, born Kelleher, are the heirs of Evariste Arceneaux and his wife, Mary B. Arceneaux, both deceased, and as such they claim to be the owners by inheritance from their deceased ancestors of the following described property: "A certain square of ground situated in that part of the City of Baton Rouge, known as Suburb Gracie, and being designated on the official map of the City of Baton Rouge as Square No. Eleven (11) of said subdivision." They have instituted this petitory action to have their title as owners of the said property recognized. In their petition they allege that Robert A. Hart is in the actual and physical possession of their property without any title whatsoever thereto, and they accordingly pray that he be ordered to deliver possession to them as the true and lawful owners thereof.

The defendant Hart appeared solely for the purpose of showing that whilst he was in possession of the property, he was not the owner thereof, as the same belonged to the heirs of the late J. E. Blouin, viz., R. E. Blouin, Mrs. Etta Jolly, and Mrs. Eola McCall, in the proportion of an undivided one half, and to Mrs. Gertrude Aldrich, widow of R. H. Aldrich and her children, Louis Stirling Aldrich and Robert H. Aldrich, in the proportion of the other undivided half. All of the last-named parties appeared as defendants in the suit and in their answers set up their title to the property, the original title thereto having been derived by J. E. Blouin, from the state of Louisiana by a public sale of date of April 2, 1881, of properties which had been acquired by the state for unpaid taxes for the years 1873 to 1877, inclusive, the particular property here involved having been assessed in the name of Mrs. Mary Arceneaux, who failed to pay the taxes for the years mentioned. Defendants aver in their answer that they have been in the actual, uninterrupted, corporeal possession of the said property since the date of its acquisition by J. E. Blouin in 1881, and that any informalities in the assessment or sale are prescribed by the lapse of three years as provided by the Constitution of the state, and they specially plead the prescriptions of three, ten, and thirty years. In a supplemental answer these defendants aver that if the plaintiffs have not been divested of the property by the said tax sale, they are nevertheless without title; there being a superior outstanding title in favor of a third person older than the one declared on by them. They further aver that they and their authors have paid all taxes assessed against the said property since the year 1881 and that none were paid by any other person during that period. Further, that no one has been in adverse possession during the same period, and they plead the prescription of thirteen years under Act No. 185 of 1904.

This suit was filed on January 2, 1917, and was immediately put at issue. It was first assigned for trial for December 18, 1919, and on various dates thereafter, but was not heard until March 9, 1922. It was not finally submitted to the court, however, until October 10, 1923, and then, with leave of counsel to file briefs. It remained in the bosom of the court, for what reason it does not appear, until July 25, 1932, on which day judgment was rendered sustaining the prescriptions of three, ten, and thirty years, and the demands of the plaintiffs were accordingly rejected and the suit dismissed. From that judgment the present appeal was taken.

■ In their brief, counsel for the defendants refer to and discuss two questions that were evidently presented by counsel for the plaintiffs in the lower court, but which they have not raised in this court, and we therefore take it that they have abandoned these two issues. The only remaining questions in the case now are as to the sufficiency of description of the property as to reasonably identify it as that which had been assessed in the name of Mrs. M. Arceneaux and sold for unpaid taxes, and, should it be found that the description was not sufficient for that purpose, have the defendants supported their plea of thirty years' prescription by uninterrupted, corporeal possession for that period of time. Of course if it be held that the defendants' authors acquired a valid title by the tax deed, it will be unnecessary to pass on the question of possession.

On February 17, 1851, Evariste Arceneaux purchased of Peter R. Braud, as appears by authentic act of sale recorded in the Conveyance Records of East Baton Rouge Parish, a lot or square of ground of substantially the same description as that set out in the plaintiffs' petition herein. Reference is made to Suburb Gracie as having been laid out by

Gates and NewComb, and the lot is said to contain four arpents more or less. An old map of Baton Rouge of the year 1837 shows Suburb Gracie, which is represented as belonging to Alfred Gates and F. D. Newman. The suburb appears to have embraced some forty squares of ground, all of regular shape and each being separately numbered. Judge Samuel Laycock, now deceased, who was a witness in the case testified: "That it was known indifferently as Gates-town; Gates and NewComb town and Suburb Gracie and that it was a series of squares beginning at North Street and running clear out to Jackson road."

The first record of any assessment that was available for the trial of this suit was an extract from the assessment roll for the year 1873, at which time, apparently, Evariste Arceneaux was dead, as the assessment is in the name of Mrs. M. Arceneaux and the property is described as "1 Square No. 17, Gates T." In 1874, Mrs. M. Arceneaux appeared on the roll as being assessed for "1 Sq. No. 3 or 7 Gates T." The assessment for 1875 carries it in her name as "1 Square No. 7 or 3 Gates T.," and that of 1876 as "1 Sq. No. 3 Gates Town."

■ It is observed at once that in none of these five different assessments is the property described as "Square No. 11" as originally designated in the title from Braud to Arceneaux, and neither is it described as "Square No. 5" under which it was transferred in the original tax deed under which the defendants derive their title. There seems to have been some uncertainty in the minds of the assessing authorities as to the exact square it was which the property owner in this instance owned, but it is no doubt certain that they knew that Evariste Arceneaux or his widow, Mrs. M. Arceneaux, did own a square of ground in Gates Town and for which she was properly assessed. It is true that an assessment of Square No. 7 or No. 3 is not an assessment of Square No. 11, but it appears that this lot No. 11 as designated on the map of 1837, already referred to, was carried by another number on another old map which was not accessible for the record, and this difference in numbers may have accounted, in part at least, for the discrepancy that appears in the descriptions on the assessment rolls for the years mentioned. As we have already stated, however, there is no doubt but that there was an assessment in the name of Mrs. Arceneaux of a lot of ground in the subdivision known as Gates Town, and as such it may well be

said to make the beginning of proof of description which, as held in the case of Schwartzenberg et al. v. Schwartzenberg et al., 138 La. 294, 70 So. 230, "may be completed by proof aliunde of possession or other relevant facts." In Landry v. McWilliams, 135 La. 655, 65 So. 875, 877, it was held that even where the number of the township in which the land is located is erroneously stated, if the description is otherwise sufficient "to furnish the means of reasonable identification," the purchaser at tax sale "acquired a good title, which is protected * * * by the constitutional prescription of three years." In Vannetta et al. v. Busbey et al., 131 La. 681, 60 So. 76, an undivided half interest in ten acres of land belonging to the tax debtor was erroneously described in the assessment being in N. W. ¼ of S. W. ¼ of section 5 in a given township and range, whereas it was situated in the N. W. ¼ of S. W. ¼ of N. W. ¼, and yet the court found that the error was not of "such character that the property intended to be sold could not thereby be identified."

In the last two cases we have cited, as well as in a number of others to which they refer, one of the important facts which supplied the means of identification of the property, and on which the court seemed to have strongly relied, was that the tax debtor owned no other property in the particular subdivision in which the property sold was assessed to him. In the case before us there is an admission by counsel for the plaintiffs that between the years 1873 and 1881, both inclusive, neither Evariste Arceneaux nor Mrs. Mary Arceneaux owned, or was assessed with, any property in Suburb Gracie other than the one square or lot herein referred to, and moreover that neither they nor their heirs paid any taxes on any property in said subdivision subsequent to the year 1881. On the other hand, by further admission of counsel for plaintiffs, it is shown that the taxes on Square No. 11 of Suburb Gracie have been paid by the defendant or their authors in title, the same having been assessed to them, since and including the year 1881. We have therefore, in a stronger degree perhaps than in some of the cases referred to, one of the important facts which furnishes us with a means of identifying the property sold as that of the real tax debtor.

■ As a further proof in connecting and identifying the property acquired by Blouin at the tax sale of 1881 with and as that formerly belonging to the Arceneauxs, we refer to a document found in the record which is

in the form of a recognition of Blouin's title made by Mrs. Arceneaux herself on April 27, 1882. This document, in the manner in which it is drawn, may not constitute legal evidence of the purpose for which it was no doubt intended, but it nevertheless can serve as proof of a "relevant fact" which, it was held in the case of Schwartzenberg v. Schwartzenberg, supra, can be used to assist in completing the description of the property of which there was a beginning of proof in the tax deed itself.

. In addition to the facts here stated, there is considerable proof to the effect that after its acquisition, Blouin took possession of the property through a tenant from whom he collected rent.

We feel satisfied therefore that when put to the test as applied in other cases of this character, the defendants' title to the property here claimed by the plaintiffs can readily be maintained.

▮ Another important factor which gives support to the title claimed by the defendants arises from the great lapse of time between the day of the original deed from which it was derived and that on which this attack was first launched against it. Over thirty-five years elapsed between those two dates. In cases of this character, where the intervening period was considerably less than it is here, it was held that the presumption "omnia rite" applied and the tax deed was sustained. In the case of Woodfolk's Heirs v. Witkowski et al., 120 La. 489, 45 So. 401, 403, in which, we would judge, about twenty-five years had passed before a tax deed of 1873 was attacked, the court said:

"Under the law the tax deed is prima facie legal, and when 20 years and more pass without attack from any quarter, and time (as said in Pickett v. Athletic Club, 47 La. Ann. 1608, 18 So. 634) has obliterated the means of verifying transactions, that fact of itself and independently of statute deepens the presumption. * * *

"Plaintiffs have delayed so long attacking the tax sale of 1873 that it would be inequitable to apply in their favor the maxim, 'De non apparentibus.' The maxim applicable to this case is omnia præsumuntur rite.' That maxim has been held to apply to tax sales. Corkran Oil Co. v. Arnaudet, 111 La. 584, 35 So. 747; Willis v. Cypress Co., 108 La. 255, 32 So. 386."

We are of the opinion that the maxim applies with equal, if not greater, force in the case before us.

The judgment appealed from, which rejected the plaintiff's demands and maintained the title of the defendants, is correct, and it is therefore affirmed.

ELLIOTT, Judge (dissenting).

Peter R. Braud sold and delivered to Mrs. Evariste Arceneaux by authentic act February 17, 1851, duly recorded: "A certain lot or square of ground, situated in that part of Baton Rouge laid out by Gates and New-Comb and known as Suburb Garcia, designated on the plan thereof as Square No. eleven and containing 4 arpents of land, more or less, together with the buildings and improvements thereon." Plaintiffs are the owners of this property by inheritance from Mrs. Arceneaux, unless her title was divested by an adjudication to the state on account of delinquent taxes, failing in that, unless defendants have acquired ownership by the prescription of thirty years acquirendi causa.

The title from John W. Bates, sheriff and tax collector, to Joseph E. Blouin, bearing date April 2, 1881, and based on Act No. 107 of 1880, is for "1 square, No. 5, Gates Town, City of Baton Rouge," said in the act to have been adjudicated to the state for taxes due by Mrs. M. Arceneaux for the years 1873 to 1877, inclusive. This declaration in the act, that the property had been adjudicated to the state, does not prove that an adjudication took place. But suppose otherwise, the property sold is not that called for in deed from Braud to Mrs. Arceneaux. The only other reference in the record to property, said to have been adjudicated to the state, is a statement appearing at the top of an assessment against Mrs. M. M. Arceneaux for the year 1876, which reads: "List of property adjudicated to the State of Louisiana, Parish of East Baton Rouge, for the year, 1876." The property described in the assessment is "1 square 3 Gates T." This declaration, made at the top of the assessment mentioned, and that made in the act of sale from Bates, sheriff, to Blouin, do not, as will be later shown, prove an adjudication to the state.

The prescription provided for by Act No. 185 of 1904 is relied upon by defendants. This act (section 1) provides: "That any person * * * holding, or claiming immovable property under a deed made by a Sheriff, or a Tax Collector * * * which has been on record for more than ten years, and is, or purports to be, founded on a forfeiture for taxes theretofore had or made, or conveys or purports to convey an interest or title in such property acquired or pretended to have been

acquired by the State, under a tax forfeiture, whether any such forfeiture actually took place or not, shall after the expiration of three years from the passage of this act, be held and deemed to be the absolute owner of the property described in such deed. * * * " This language, if enforced literally, would take property without due process of law. "A statute, therefore, which would make a tax deed conclusive evidence of a complete title and preclude the owner of the original title from showing its invalidity, would be void, because being not a law regulating evidence but an unconstitutional confiscation of property." Cooley's Constitutional Limitations, subject "Protection by the law of the land" (6th Ed.) p. 452 et seq.

But the statute does not help defendants. It has reference only to property described in the tax deed. Square 11 of Suburb Garcia is not called for in any of the deeds adduced by defendants. The record shows no adjudication to the state. An adjudication to the state on account of delinquent taxes for the years mentioned is governed by the provisions of Act No. 42 of 1871, §§ 57, 67 and 68, and of Act No. 47 of 1873, §§ 1 and 9, and was accomplished by the recordation of a description of the property, according to the assessment, in the mortgage book of the parish in which it is situated. Registry in the mortgage book, as required by the statute, was a fundamental prerequisite. No registry in the mortgage book, as provided by the statute in force at the time, is shown to have been made. If it had been done, it would have been shown by the mortgage books. In the absence of any showing from the mortgage books, no adjudication can be said to have taken place.

The necessity for registry of the delinquent assessment in the mortgage book, as required by the acts of 1871 and 1873, for the years called for in the title from Bates to Blouin, was considered in the case, George v. Cole, 109 La. 816, 33 So. 784, and it was held to be necessary. In that case registry had been made but it was attacked as illegal. A document said to be a recognition of the Blouin title on the part of Mrs. Arceneaux is contained in the record. The signature to the document, said to have been signed by "Marie B. Arceneaux" by making her mark, was not proved. It bears date April 27, 1882, and reads: "I agree and bind myself to make no opposition to the title, acquired by Joseph E. Blouin at tax-sale in Baton Rouge on the 2nd of April, 1881 of 1 square, 5, Gates Town, City of Baton Rouge, belonging to myself, and I do hereby ratify said tax-sale to said Blouin."

This acknowledgment is not an admission that Square 11 in Suburb Garcia and Square 5 of Gates Town is the same property nor does it relinquish any right to Square 11 in Suburb Garcia.

As for defendants' claim of ownership under the prescription of thirty years' acquirendi causa, I take the position that the requisite possession has not been established. There is testimony that Blouin, commencing at a time, which may be estimated at about thirty years ago and for several years thereafter, collected rent from the occupant of a shanty, which it is claimed stood on the Arceneaux square. It is not certain that the shanty stood on the Arceneaux square. Ownership and title to immovable property must be established with certainty. The character of possession necessary for the prescription of thirty years is provided by the Civil Code, art. 3499 et seq. The possession must be actual and unequivocal. It does not seem to me that unequivocal possession has ever existed on the part of defendants.

Then again plaintiffs produced in rebuttal six witnesses, to wit, S. D. Hogue, D. J. Kelleher, E. D. Aricer, Mary Stannard, Franklin Sevier, and Mina Buckel, who testified that they had known the Arceneaux square for many years, I estimate from their testimony from twenty-five to forty years, except Mina Buckel, who says she has known it longer. The five witnesses first named declared that there had not been, during that time, any house on the Arceneaux square.

Mina Buckel testified that she knew the Arceneaux square during the Civil War; that during the war there was an old hut there and it stayed there possibly three or four years. That was before it was sold for taxes, but she said that she hadn't seen any house on it since. This witness remembered that the property was sold for taxes.

I think the preponderance of the proof on the subject is with the plaintiffs. I am satisfied that the Arceneaux square was supposed to have been sold for taxes, but I think the result of the showing is that the supposition was not well founded. There is no certainty in Blouin's claim about collecting rent for a shanty on the Arceneaux square. He may have supposed the shanty on the Arceneaux square, but the preponderance of the proof is against his claim. The other findings of fact and circumstances noted in the opinion of the court are conceded. I concede that when it is shown that property has been sold for delinquent taxes and the description in the assessment and tax title is incorrect, if

there be in the assessment and tax title a description sufficient to form a foundation for title, proof may then be offered aliunde to show that it is none other than the property of the tax debtor, but contend that a proper foundation for such proof does not exist in this case. I think the judgment appealed from is erroneous, and that there should be judgment in favor of the plaintiffs as prayed for.